J-A05032-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
CHRISTOPHER WESTLAKE :
:
Appellant : No. 983 WDA 2018

Appeal from the Judgment of Sentence Entered June 27, 2018
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-MD-0000049-2018

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: FILED MARCH 19, 2019

Christopher Westlake (Appellant) appeals from the judgment of

sentence imposed after the trial court found him guilty of indirect criminal

contempt[1] (ICC) for violating a protection from abuse (PFA) order entered on

behalf of Sarah Westlake (Wife). Upon review, we affirm.

On September 27, 2017, the trial court entered the PFA order, which

"completely evicted and excluded" Appellant "from the residence at 525 North

McKean Street, Kittanning, PA" (the Property). Order, 9/27/17, at 2. The

order remained in effect until March 27, 2019. Id. at 1.

On January 9, 2018, the Commonwealth filed a criminal complaint

_____

[1] See 23 Pa.C.S.A. § 6114(a) ("Where the police, sheriff or the plaintiff have
filed charges of indirect criminal contempt against a defendant for violation of
a protection order . . . the court may hold the defendant in indirect criminal
contempt and punish the defendant in accordance with law.").

alleging that Appellant was in contempt of the PFA order based on an alleged violation that occurred on December 7, 2017, less than three (3) months after the order was entered. The complaint stated that Appellant:

> . . . did violate section 2 of the protection from abuse order, evicting [Appellant] from the residence of 525 North McKean Street, and [Appellant] did enter the residence, according to [Wife], alleging that [Appellant] did set off the alarm to the residence, canceling the police response, to which [Appellant] was on the security protocol list. [Wife] is also alleging that [Appellant], once inside the residence, then changed the master code to log into the home[']s surveillance system, locking [Wife] out. All in violation of section 2 of the protection from abuse order which states [that Appellant] is evicted from the property, and may not enter . . . .

Complaint, 1/9/18.

The trial court convened a hearing on May 21, 2018. The court accurately recounted the evidence presented as follows:

> The Commonwealth presented the testimony of [Wife,] one of the parties protected by the PFA Order . . . and Officer Greg Koprivnak of the Kittanning Borough Police Department, who investigated the incident and filed the ICC complaint on January 9, 2018.
>
> On September 27, 2017, after hearing at which the parties were represented by counsel, the Court entered the PFA Order on behalf of Wife and three children . . . ("the Children"). The PFA Order was entered by consent without an admission of wrongdoing. It provides that [Appellant] shall not "abuse, harass, stalk, or threaten" any of the protected parties "in any place where they may be found." It further provides, in relevant part, that [Appellant] is "completely evicted and excluded from" the residence located at . . . [the Property],
>
> > or any other residence where [Wife] or any other person protected under this order may live. Exclusive possession of the residence is granted to [Wife]. [Appellant] shall have no right or privilege to enter or be present on the premises of [Wife] or any other

- 2 -

person protected by this order.

(PFA Order, at p. 2, ¶ 2).

On December 7, 2017, [Appellant] filed a PFA petition against Wife on behalf of himself and the Children, which was ultimately dismissed. The same day, at some point after 6:00 p.m., Wife received a phone call from the security company associated with the alarm system installed at the [Property], where Wife was not living at the time. Although she missed the call, Wife called the security company back. Someone from the security company then told her that the alarm system had been activated. They further advised that, after receiving no response from Wife, the company called [Appellant], who was still listed as a secondary emergency contact. [Appellant] told the security company not to send police and that he would go himself to investigate the situation. He further requested that they change the security protocol so that he, rather than Wife, would be contacted first in the event that the alarm system was tripped again. They did not change the security protocol. Wife then called [Appellant], who told her that he had been at the [Property] to check it, but did not go in and was not the one who set off the alarm. [Appellant] asked Wife if he could go into the residence, and she declined.

Wife went to the [Property] the next day to check the security cameras, but discovered that her code no longer worked. The only person who can change login access to the camera system is the person with the administrator password, who is [Appellant]. As of the date of the hearing, Wife still was not able to access the security camera footage for this reason. Given that information, Wife assumed that [Appellant] had been on the [P]roperty, so she reported the incident to the Kittanning Borough Police. Prior to December 7, 2017, Wife had contacted the security company and changed the security system access code, of which change [Appellant] was not aware. Wife did not see [Appellant] at the [P]roperty. Her legal residence on the day of the violation was [a different address in] Kittanning, Pennsylvania.

Officer Koprivnak testified that Wife contacted him on December 11, 2017, to report what she believed was a violation of the PFA Order. Wife told Officer Koprivnak that she did not see [Appellant] at [the Property], but that the security company had contacted her to advise that the alarm had been activated. Wife

- 3 -

then relayed to [O]fficer Koprivnak her conversation with the security company. Officer Koprivnak then contacted the security company himself. The company advised that they talked with [Appellant], who told them to contact him first if there were any further alarm activations. Officer Koprivnak did not go to [the Property] to investigate. He contacted [Appellant] on December 12, 2017. [Appellant] advised that only he and Wife had access codes to the video surveillance system. [Appellant] denied changing the code and being at the [P]roperty.

Officer Koprivnak filed the ICC complaint on January 9, 2018. The hearing initially was scheduled for January 29, 2018, at which hearing [Appellant] appeared and requested a continuance because he had not been served with the complaint. The Court granted the continuance and continued the hearing to March 26, 2018. On that date, [Appellant] appeared pro se and requested a continuance in order to secure counsel, which the Court granted. The Court continued the hearing to May 21, 2018, advising [Appellant] in the order that no further continuances would be granted for any reason. [Appellant] appeared pro se on May 21, 2018. Before the beginning of testimony, the Court asked [Appellant] if he had legal counsel, to which [Appellant] replied that he did not. The Court then asked [Appellant] if he was representing himself, and [Appellant] responded, "yes." [N.T. Contempt Hearing, 5/21/18, at 3.]

[Appellant] did not testify at the hearing. . . .

Trial Court Opinion, 8/15/18, at 1-4 (footnote omitted).

At the conclusion of the hearing, the trial court convicted Appellant of ICC. The court deferred sentencing to June 27, 2018, when it sentenced Appellant to six (6) months of confinement, with eligibility for electric home monitoring after 90 days. Appellant subsequently obtained counsel, who both entered his appearance on behalf of Appellant and filed this timely appeal on July 6, 2018. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

- 4 -

Appellant presents four issues for our review:

I.   Whether there was insufficient evidence to establish wrongful intent on the part of [Appellant]?

II.  Whether the trial court erred in failing to adequately colloquy [Appellant], where [Appellant] had the right to counsel at his indirect criminal contempt hearing and [Appellant] did not knowingly and intelligently waive his right to counsel?

III. Whether the trial court erred in finding against [Appellant] on the basis that [Appellant] failed to testify and refute the testimony of his wife in violation of [Appellant's] federal and state constitutional right against self-incrimination and violated his federal and state due process rights?

IV.  Whether [Appellant's] due process rights were violated and insufficient evidence was introduced where the evidence necessary to establish that [Appellant] was purportedly at the property was solely based on hearsay?

Appellant's Brief at 4.

For ease of analysis, we address Appellant's issues out of order. Because the right to counsel in a criminal contempt proceeding is a constitutional right, we begin with Appellant's second issue, in which he claims that he was denied the right to counsel where "the trial court engaged in no colloquy, [such that] there could be no valid waiver." See Appellant's Brief at 22; see also Commonwealth v. McDonough, 812 A.2d 504, 506 (Pa. 2002) ("The right to counsel in a criminal proceeding is a fundamental right guaranteed by the Sixth Amendment of the United States Constitution and Article One, Section Nine of the Pennsylvania Constitution."). Appellant contends that the trial court erred by failing to conduct a proper waiver-of-counsel colloquy. Id. at 18-19, citing Pa.R.Crim.P. 121(A)(2)(a)-(f)

(defendant understands that he has the right to be represented by counsel, understands the nature of the charges, etc.); Commonwealth v. Phillips, 93 A.3d 847, 855 (Pa. Super. 2014) (trial court's failure to comply with Rule 121 at each of three waiver-colloquies was error).

In rebutting this argument, the Commonwealth emphasizes that "the totality of the circumstances must be reviewed[, where Appellant] previously requested a continuance to secure counsel, then showed up to the hearing without counsel and told the trial court he was ready to proceed." Commonwealth Brief at 4.

It is undisputed that Appellant was entitled to counsel at the contempt hearing. See 23 Pa.C.S.A. § 6114(b)(3) ("defendant shall be entitled to counsel" "on a charge of indirect criminal contempt"); Commonwealth v. Crawford, 352 A.2d 52, 54 (Pa. 1976) (summary conviction for contempt of court of a witness who was not represented by counsel cannot stand), disapproved on other grounds, Commonwealth v. Moody, 125 A.3d 1, 15 (Pa. 2015). However, upon review — and contrary to Appellant's lack of waiver argument — it is apparent that Appellant forfeited his right to counsel.

In Commonwealth v. Lucarelli, 971 A.2d 1173 (Pa. 2009), the Supreme Court clarified that the rule governing waiver of the right to counsel and its colloquy requirements does not apply to situations where a defendant has forfeited his right to counsel. The Supreme Court stated, "[D]efendants have been held to have forfeited the right to counsel where they have either

engaged in physically abusive and threatening conduct, or have engaged in dilatory conduct." Id. at 1180 (emphasis added). Although neither party nor the trial court in this case has used the word "forfeiture" in addressing Appellant's claim, it is clear that the term applies to this case and in the context of Appellant's pro se status at the contempt hearing. The trial court explained:

> [Appellant] contends that the Court erred in failing to adequately colloquy him to determine whether his decision to proceed pro se was made knowingly and intelligently. [Appellant] was represented by counsel at the PFA hearing in September 2017. At the second date and time scheduled for the ICC hearing, March 26, 2018, [Appellant] requested a continuance to secure counsel, which continuance the Court granted over the Commonwealth's objection. Approximately two months later, on May 21, 2018, [Appellant] again appeared without counsel. The Court inquired of [Appellant] whether he intended to proceed pro se, which he indicated that he was. There is no indication anywhere in the record that [Appellant] was unaware that he was entitled to counsel at the hearing, and the Court gave [Appellant], who is not indigent, every opportunity to secure counsel.

Trial Court Opinion, 8/15/18, at 9.

Consistent with the above facts, the Supreme Court has held that "where a defendant's course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed pro se is mandated because that defendant has forfeited the right to counsel." See Luccarelli, 971 A.2d at 1179. Accordingly, Appellant's right to counsel claim lacks merit.

Next, we address Appellant's first and fourth issues, in which Appellant

challenges the sufficiency of the evidence, claiming: 1) there was insufficient evidence of Appellant's "wrongful intent"; and 2) there was insufficient evidence that Appellant was at the Property because the necessary evidence was based on hearsay. See Appellant's Brief at 10.

We review a contempt conviction for an abuse of discretion. Commonwealth v. Haigh, 874 A.2d 1174, 1177 (Pa. Super. 2005). We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision. Id. at 1176–77. In reviewing whether the evidence was sufficient to support the conviction, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." Commonwealth v. Taylor, 137 A.3d 611, 614 (Pa. Super. 2016) (en banc) (citation and quotation omitted). In applying the above test, "we may not weigh the evidence and substitute our judgment for the fact-finder." Commonwealth v. Brumbaugh, 932 A.2d 108, 109 (Pa. Super. 2007) (citation and quotation omitted). Finally, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Id. at 110.

This Court has repeatedly stated that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." Commonwealth v. Lambert, 147 A.3d 1221, 1226 (Pa. Super. 2016) (citation and quotation omitted). "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." Commonwealth v. Jackson, 10 A.3d 341, 346 (Pa. Super. 2010) (citation and quotation omitted). A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court. Lambert, supra at 1226.

In order to establish indirect criminal contempt, the Commonwealth must prove: "1) the order was sufficiently

> definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." Commonwealth v. Walsh, 36 A.3d 613, 619 (Pa. Super. 2012) (citation and quotation omitted).

Commonwealth v. Felder, 176 A.3d 331, 333–34 (Pa. Super. 2017). Additionally, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence." Taylor, 137 A.3d at 614.

With regard to wrongful intent, we recognize that "[w]rongful intent can be imputed by virtue of the substantial certainty that [one's actions will be] . . . in violation of the PFA Order," and "judges should use common sense and consider context and surrounding factors in making [a] determination as to whether [a] violation of a PFA is truly intentional." Lambert, 147 A.3d at 1227.

Appellant asserts that there was no evidence of his wrongful intent when he "purportedly went to the residence," because Wife "admittedly no longer used or resided at the property and was not present." Appellant's Brief at 13. The Commonwealth counters that "a clear intent to violate was present through [Appellant's] own statement that he went to the Property, an act that was prohibited by the PFA Order." Commonwealth Brief at 9. The trial court explained:

> [Appellant] first contends that the evidence presented was insufficient to establish his wrongful intent in entering onto the Property. The Court disagrees. This is not a case where there is evidence that the defendant did not intend to violate the order, committed a de minimis infraction, or engaged exclusively in non

threatening conduct. See [Haigh, 874 A.2d 1174]. Rather, the evidence establishes that [Appellant] went to the Property, was unaware that his access code for the security system had been changed, and, after he entered and tripped the alarm, attempted to change the security protocol so that neither Wife nor law enforcement would discover his presence. There also is evidence that [Appellant] attempted to prevent access to the security cameras that otherwise would have confirmed his presence on the Property. Finally, there is no evidence that [Appellant] was at the time aware that Wife was not present and was not residing at the Property. Thus, considering all of the evidence together, the Court was free to and did infer [Appellant's] wrongful intent to violate the PFA Order.

Trial Court Opinion, 8/15/18, at 6-7.

Wife's testimony supports the trial court's inference of Appellant's wrongful intent. Wife testified that she "had changed the code to the alarm system, not the camera system, which I'm sure surprised [Appellant]." N.T., 5/21/18, at 8. Wife further stated:

I was going to check the cameras to see if [Appellant] was telling the truth and I was now locked out of my user name, and the only person who can do that is the one who has the administrator password, which is [Appellant].

Id. at 5. Wife explained that when she could not access the security system, she "assumed that [Appellant] had been on the [P]roperty and that he changed the code, so I called the state — the Kittanning Police and reported it." Id. at 6. Wife clarified that Appellant "had to have entered the house in order to access the cameras, and there is no way he could have done it otherwise." Id. She explained:

The security system and the cameras are on separate systems. Because of the PFA, my security company allowed me to change the alarm code since [Appellant] was no longer allowed on the

[P]roperty and [Appellant] was unaware of [the alarm code change], so whenever he was going into the house he incidentally set the alarm off.

Id. When asked about her access to the security videos, Wife testified that she could not access the videos, but if Appellant would "unlock" them, and "he's telling the truth, [then] it would corroborate his story, but . . . " Id. Wife explained that she and Appellant had bought and installed the cameras, "so there is really no one that would have any way to clear it off otherwise or allow me to access that. Like I said, he's the only one that can access it." Id. at 7, 14. This testimony, as well as the record as a whole, supports the trial court's determination that Appellant acted with wrongful intent in violating the PFA order.

Appellant also argues that the evidence was insufficient to establish ICC – and his due process rights were violated – because the Commonwealth's evidence improperly consisted "solely of hearsay evidence." Appellant's Brief at 26. Appellant references Wife's testimony that the security company told her the alarm was triggered, that it contacted Appellant, and that Appellant told the security company not to send police and that he would check the home. Appellant further points to Wife's "hearsay testimony that [Appellant] told her that he was at the property," as well as Officer Koprivnak's testimony about what Wife reported to him. Id. at 27-28. The essence of Appellant's argument is that without hearsay evidence, regardless of whether it was

admissible, "there is no evidence that [Appellant] was ever at the home."[2]  Id. at 29.  Appellant relies on Commonwealth ex rel. Buchanan v. Verbonitz, 581 A.2d 172 (Pa. 1990) (plurality), which he acknowledges held "that reliance of hearsay alone at a preliminary hearing violated state constitutional norms."  Appellant's Brief at 25 (emphasis added).  Appellant also refers to this Court's decision in Commonwealth v. Ricker, 120 A.3d 349 (Pa. Super. 2015), appeal dismissed as improvidently granted, 170 A.3d 494 (Pa. 2017).[3]

The Commonwealth responds that the trial court properly found there to be sufficient circumstantial evidence that Appellant was at the Property, namely Wife's testimony that she was unable to view the security camera footage because the access code was changed, and that the code "could only be changed by entering the Property and changing it while inside."

_____

[2] Appellant acknowledges that he did not object to the hearsay testimony at the contempt hearing, but now argues "this makes it all the more relevant that he did not voluntarily, knowingly, and intelligently waive his right to counsel."  Appellant's Brief at 27 n.2.  While we have already disposed of Appellant's right to counsel claim, we further reject his inference that a pro se defendant's failure to object is relevant to the question of whether Appellant was denied his right to counsel.  See Commonwealth v. Ray, 134 A.3d 1109, 1115 (Pa. Super. 2016) (pro se defendant "assumes the risk that his lack of legal training will place him at a disadvantage").

[3] Appellant also cites the dissenting opinion in the Supreme Court in the Ricker case.  Appellant's Brief at 26, citing Ricker, 170 A.3d at 507-520 (Wecht, J., dissenting).  Appellant disregards the fact that the majority of the Supreme Court dismissed the appeal in Ricker as improvidently granted, and thus the dissent's analysis has no precedential value.

Commonwealth Brief at 18.

We first recognize that, as Appellant acknowledges, Verbonitz addressed the burden of proof at a preliminary hearing. See Verbonitz, 581 A.2d at 175 ("[T]he Pennsylvania Constitution mandates a criminal defendant's right to confrontation and cross-examination at the preliminary hearing."). In Ricker, this Court considered Verbonitz and concluded "that an accused does not have the right to confront the witnesses against him at his preliminary hearing under" the United States and Pennsylvania confrontation clauses. Ricker, 120 A.3d at 362. In any event, after granting allowance of appeal, our Supreme Court dismissed the appeal as improvidently granted, following its determination that "the Commonwealth introduced some non-hearsay evidence at [the] preliminary hearing." See Ricker, 170 A.3d at 507 (Wecht, J., dissenting). Instantly, we distinguish both Verbonitz and Ricker because in this case, Appellant's issue relates to the contempt hearing – the guilt-phase of his ICC charge – and not a preliminary hearing as specifically contemplated in Verbonitz and Ricker.

Moreover, we agree with the trial court and the Commonwealth that the Commonwealth presented sufficient non-hearsay, circumstantial evidence that Appellant was at the Property in violation of the PFA. See Taylor, 137 A.3d at 614 ("The Commonwealth may sustain its burden by means of wholly circumstantial evidence."). In its opinion, the trial court cited Wife's testimony that the day after the alarm system was activated, she went to the Property

- 13 -

and attempted to check the security camera's footage, but her access "code no longer worked," and the only person who could have changed the code was "the person with the administrator password, who" was Appellant. Trial Court Opinion, 8/15/18, at 3. Wife further explained that Appellant "had to have entered the house in order access the cameras, and there is no way he could have done it otherwise." N.T., 5/21/18, at 6; see also id. at 40-41 (trial court finding Appellant guilty based on undisputed testimony and "circumstantial evidence establishing" violation of PFA order); Trial Court Opinion, 8/15/18, at 10 (unrefuted testimony of Wife "considered with the other circumstantial evidence, was sufficient to support the Court's finding of indirect criminal contempt"). This evidence, which Appellant does not acknowledge or address on appeal, refutes his contention that he was convicted of ICC solely on hearsay evidence. Appellant's claim of a due process violation is thus meritless, as is his overall contention that there was insufficient evidence to support his conviction.

Finally, we address Appellant's third issue, in which he claims that the trial court violated his right against self-incrimination, and "in finding [him] guilty, held it against him that he did not testify and dispute that he was on the property." Appellant's Brief at 23. In support, Appellant cites the court's statement at the contempt hearing: "[I]t's undisputed that you are accused of saying, I'm on the property. You never disputed that. You never said it's not so." Id. Appellant reasons that the only way he could have disputed

- 14 -

Wife's testimony was to testify. Appellant also challenges the court's "belated" and unsupported statement in its opinion that it placed no burden on him to testify, as "it is evident from the record that the court did find it material" that he did not testify. Id. at 23-24.

This Court has stated:

"It is well settled that the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence at trial or instructions by the court that such is evidence of guilt." This Court has long recognized the principle 'that the prosecutor's remarks to the jury should not contain any adverse reference to the failure of [an accused] to offer himself as a witness in the event that he does not testify on his own behalf.'" . . . However, "[s]uch comments are improper [only] if they unequivocally call attention to the defendant's failure to testify." Therefore, "while it is improper for a prosecuting attorney to refer to a defendant's failure to testify, it is not improper for the prosecutor to identify for the jury items of evidence which have been uncontradicted."

Commonwealth v. Ulen, 607 A.2d 779, 790 (Pa. Super. 1992) (citations omitted).

We set forth below the trial court's statements cited by Appellant. In rendering its guilty verdict at the conclusion of the contempt hearing, the court addressed Appellant:

[B]ased upon the evidence before the Court, and in that evidence it's undisputed that you are accused of saying, I'm on the property. You never disputed that. You never said it's not so. So the undisputed testimony before the Court is your own admission that you violated the protection from abuse order. In addition, there is circumstantial evidence establishing the same.

N.T., 5/21/18, at 40-41 (emphasis added). In its Rule 1925(a) opinion, the court expanded:

[Appellant] misconstrues the Court's findings at the end of the hearing, wherein the Court found that Wife testified that [Appellant] stated he was on the Property. That testimony, which contained [Appellant's] admission, was not refuted by [Appellant], who did not testify. The Court did not treat [Appellant's] silence or refusal to testify as an "admission" of guilt. Rather, the Court considered and credited the unrefuted testimony from Wife that [Appellant] admitted to her that he was on the Property and further asked if he could enter the residence. The Court placed no burden on [Appellant] to testify and did not infer from his silence that he admitted guilt. The Court merely credited the unrefuted testimony presented, which contained certain admissions from [Appellant] that, considered with the other circumstantial evidence, was sufficient to support the Court's finding of indirect criminal contempt beyond a reasonable doubt.

Trial Court Opinion, 8/15/18, at 10.

Although the Ulen case cited above addressed the propriety of a prosecutor's remarks to a jury in referencing a defendant's decision not to testify at trial, it is instructive to our review. Here, the trial court explained that it did not construe Appellant's decision not to testify as an inference of guilt, but rather, credited Wife's testimony about what Appellant told her. As noted, Appellant represented himself at the contempt hearing. During Appellant's cross-examination of Wife, the following exchanges occurred between the parties:

> [APPELLANT]:     Okay. Did you contact the Defendant during the alleged incident?
>
> [WIFE]:     Yes, after I had spoke[n] to the security company.
>
> [APPELLANT]:     And what did he say?
>
> [WIFE]:     I asked if you had entered the property and you said yes, or I asked if you had been on

- 16 -

the property and you said yes.

[APPELLANT]:    Okay.  You gave no other directions?

[WIFE]:    I said, do not go into the house.  You had asked and I said no.

[APPELLANT]:    What is your sister's place of employment?  . . .

N.T., 5/21/18, at 11-12 (emphasis added).

Further:

[APPELLANT]:    You state that the security system contacted me?

[WIFE]:    Correct.

[APPELLANT]:    Why was I left on the protocol?  Why was the Defendant left on the protocol?

[WIFE]:    They had contacted me and I didn't answer and they had left your name on there inadvertently.  I never changed it.  Oversight on my part.

[APPELLANT]:    So your statement is they contacted me inadvertently?

[WIFE]:    Excuse me?

[APPELLANT]:    You are stating that they contacted me in advertently?

[WIFE]:    Yes.  I inadvertently left you on there as a contact.

[APPELLANT]:    You made a statement that you assumed I was at the residence.

[WIFE]:    There is no assumption.  You stated you were.

[APPPELLANT]:    You also stated that there was a hot water tank missing? . . .

N.T., 5/21/18, at 12-13 (emphasis added).

As noted in Ulen, it is not improper for a prosecutor to point to "items of evidence which have been uncontradicted." See Ulen, 607 A.2d at 790. Likewise, the trial court in this case cited — in addition to circumstantial evidence — Wife's uncontradicted testimony that Appellant told her he was at the Property. We find no merit to Appellant's claim regarding his decision not to testify at the contempt hearing.

For the above reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/19/2019