J-E01013-16

2016 PA Super 83

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT WAYNE TAYLOR, II, | |
| Appellant | No. 1723 WDA 2013 |

Appeal from the Judgment of Sentence of September 24, 2013
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000212-2013

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT WAYNE TAYLOR, II, | |
| Appellant | No. 1724 WDA 2013 |

Appeal from the Judgment of Sentence of September 24, 2013
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000197-2013

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, LAZARUS, MUNDY, OLSON, OTT, and STABILE, JJ.

OPINION BY OLSON, J.:                    **FILED APRIL 11, 2016**

Appellant, Robert Wayne Taylor, II, appeals from the judgment of sentence entered on September 24, 2014, following his bench trial convictions for two counts of indirect criminal contempt, 23 Pa.C.S.A. § 6114.  Upon careful review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [J.N.K., Appellant's former wife], initiated a protection from abuse action against [Appellant] on or about September 26, 2011. A final protection from abuse order was entered on May 18, 2012 (the "PFA Order"). The PFA Order provides that [Appellant] "shall not contact [J.N.K.], or any other person protected under this order, by telephone or by any other means, including through third persons." The only exception to the communication restriction in the PFA Order is found in paragraph 5, which provides that "the parties may have text message contact for the purposes of custody scheduling only, without said contact constituting violation of this order. All other terms of this order remain in effect during such contact." On May 22, 2013, the parties entered into a separate custody consent order, paragraph 6 of which provides that "the parties may have text communication with one another for legitimate issues involving the children."
>
> On June 21, 2013, [J.N.K.] and [Appellant] met at the Sheetz convenience store in Kittanning, Pennsylvania for a custody exchange of the parties' two children. The children exited [J.N.K.'s] car and walked to [Appellant's] vehicle. The parties were parked approximately four vehicle[] widths apart. [Appellant] then asked one of the children to ask [J.N.K.] whether she had spoken with her lawyer about matters concerning the sale of the parties' former marital residence. The child went back to [J.N.K.'s] car, spoke with her about the matter, then returned to [Appellant's] vehicle. [J.N.K.] then exited her vehicle and began speaking to [Appellant] about the house. After the parties' exchange, [Appellant] went into the store with the children. Based on his indirect communication with [J.N.K.], through the child, [Appellant] was charged with indirect criminal contempt on or about July 2, 2013 (No. MD-0000197-2013).
>
> On or about July 13, 2013, [Appellant] sent [J.N.K.] a text message, again with regard to the marital residence. It read[] as follows:

> I also sent an email to your lawyer today about the house on 4th Avenue. The bank said if you get paperwork done I told [your lawyer] about they will take your name off. So if you could please talk to her about it, me and the girls can start moving into it. Thanks. I will tell them. They said they love you.

> Based on the contents of the text message, [Appellant] again was charged with indirect criminal contempt on or about July 16, 2013 (No. MD-000212-2013).

> The [trial court] conducted a bench trial on both counts of indirect criminal contempt on July 29, 2013. At the trial, the parties generally did not dispute what occurred at the Sheetz store on June 21, 2013 or the contents of the text message sent by [Appellant] on July 13, 2013. The [trial court] ultimately found that the Commonwealth had proven beyond a reasonable doubt that [Appellant] had violated the PFA Order on both counts. The [trial court] concluded that the subject of both communications was not a legitimate concern regarding the children but a legal matter regarding the disposition of real estate involved in the parties' divorce proceeding.

> [On September 24, 2013, t]he [trial court] sentenced [Appellant] to 90 days' incarceration in the Armstrong County Jail, together with a $300.00 fine on both counts, the sentences to run concurrently. [Appellant] filed notices of appeal and concise statements of [errors] complained of on appeal at both case numbers on October 24, 2013 and November 18, 2013.

Trial Court Opinion, 12/13/2013, at 1-4 (superfluous capitalization and footnote omitted).

On appeal to this Court, Appellant challenged: (1) the sufficiency of the evidence to support both of his indirect criminal contempt convictions, and; (2) the discretionary aspects of his sentence. On September 26, 2014, a divided panel of this Court reversed both of Appellant's convictions for

indirect criminal contempt, finding the evidence was insufficient to prove that Appellant possessed wrongful intent in communicating with J.N.K. As a result, the panel majority did not reach the discretionary aspects of sentencing claim. On November 24, 2014, this Court granted the Commonwealth's application for reargument *en banc* and ordered the original panel decisions withdrawn. Subsequently, the parties submitted their arguments to the court *en banc* based on their original appellate briefs. The case is now ready for disposition.

As initially framed, Appellant presents the following issues for our review:

> I. Did the trial court err and/or abuse its discretion in failing to consider the custody modification [order] entered May 22, 2013 prior to the filing of the subject indirect criminal contempt charge[s] which allowed for text communication for any legitimate issue involving the children?
>
> II. Did the trial court err and/or abuse its discretion in sentencing [Appellant] to a sentence of [] three months [of] incarceration and fines of $300.00?

Appellant's Brief at viii (superfluous capitalization omitted).

In his first issue presented, Appellant argues that the trial court convicted him of both counts of indirect criminal contempt based upon the PFA Order entered on May 18, 2012, without regard to the custody modification order entered on May 22, 2013 that expanded contact to include "text communication with one [another] for legitimate issues involving the children." *Id.* at 1. Appellant argues that his communications

with J.N.K. were limited to his relocation with the parties' children into the marital residence, so that the children could be closer to their school. *Id.* at 2-3. Appellant maintains the trial court erred by concluding "the only reason for communication on [Appellant's] part was economic issues involving the divorce." *Id.* at 3. He claims that the subject text message and request for communication through his daughter at a custody exchange concerned nothing more than "paperwork involving a house where he would move with his girls." *Id.* at 5. As such, Appellant contends that the Commonwealth "did not and could not prove beyond a reasonable doubt that [Appellant] willfully intended to violate the PFA." *Id.* at 4.

Our standard of review is well-settled:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Woodard*, 129 A.3d 480, 489-490 (Pa. 2015) (internal citations and quotations omitted).

Pursuant to 23 Pa.C.S.A. 6114,

> [w]here the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect

criminal contempt and punish the defendant in accordance with law.

23 Pa.C.S.A. § 6114(a).

"Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." **Commonwealth v. Jackson**, 10 A.3d 341, 346 (Pa. Super. 2010) (citation omitted). To establish indirect criminal contempt, the Commonwealth must prove:

> 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

**Id.** (citation omitted).

Here, the PFA order states:

> [Appellant] shall not abuse, harass, stalk, or threaten any of the above persons in any place where they might be found.
>
> Except as provided in paragraph 5 of this order, [Appellant] shall not contact [J.N.K.], or any other person protected under this order, by telephone or by any other means, including through third persons.
>
> \*         \*         \*
>
> 5. […]The parties may have text message contact for purposes of custody scheduling only, without said contact constituting violation of this order. All other terms of this order remain in effect during such contact.

PFA Order, 5/18/2012, at 1, 4.

Following the entry of the PFA order, on May 22, 2013, a custody order was entered by consent of the parties providing, in pertinent part:

- 6 -

6. The parties may have text communication with one another for legitimate issues involving the children.

Consent Order, 5/22/2013, at 3.

The trial court determined that Appellant engaged in two communications with J.N.K. that constituted violations of both the PFA Order and the custody consent order. The first communication was through the parties' minor child on June 21, 2013; the other was via text message on July 13, 2013. In so determining, the trial court concluded:

It is undisputed that the PFA Order was clear, that [Appellant] was aware of them, and that [Appellant] voluntarily initiated both communications with [J.N.K.]. With regard to wrongful intent, the [trial court …] concluded that [Appellant's] intent was not to discuss matters involving the children's well-being or custody schedule, but instead was to discuss with [J.N.K.] the outstanding issues regarding their jointly-held real property and to impress upon her [Appellant's] desire to come to a quick resolution. The [trial court] also noted as part of its findings that [Appellant] had violated the PFA Order on 11 occasions, eliminating any possibility that the communications were unintentional or benign.

Trial Court Opinion, 12/13/2013, at 6. For the reasons that follow, we agree.

We will review the two communications that served as the basis of the individual convictions separately. With regard to the communication on June 21, 2013, there is no dispute that during a custody exchange Appellant communicated with J.N.K. through the parties' oldest daughter. N.T., 7/29/2013, at 10-11, 17-18. In reading the PFA Order and the custody consent order together, Appellant was not permitted any contact with J.N.K.

"by telephone or by any other means, including through third persons" except for "text message contact for purposes of custody scheduling only" and then subsequently modified to provide for "text communication with one another for legitimate issues involving the children." The orders at issue were clear that at no time was Appellant permitted contact with J.N.K. through a third party. Appellant does not dispute that the PFA Order was sufficiently clear as to the prohibited conduct, and that he had notice of the PFA Order. Further, Appellant admitted that he initiated contact through his daughter, a volitional act. Thus, the first three elements above, as required to establish indirect criminal contempt, have been met with regard to the conviction related to the communication via the parties' daughter.

As for the fourth element needed to establish indirect criminal contempt, Appellant's first appellate issue focuses almost entirely on the trial court's determination that Appellant's communication constituted wrongful intent. Regarding the incident at Sheetz, J.N.K. testified that Appellant was "asking about what was going on with [another] house [the parties' jointly owned] and that [Appellant] wanted to move into it" and that Appellant "approached [her] in regards to the sale of the other house." N.T., 7/29/2013, at 10. Appellant told J.N.K. that he did "not want to move into the other house if it [were] going to be a PFA violation for him to move in there[.]" *Id.* at 11. She further testified that Appellant stated:

> I want to move into the other house. You haven't talked to your attorney yet. Why haven't you talked to your attorney and that I don't want to move into the other house if you

- 8 -

are going to be turning me in for PFA violations. [To which J.N.K. replied,] don't violate the PFA and I won't turn you in.

*Id.* at 14.

In contrast to J.N.K.'s testimony, Appellant initially explained his reasons for communicating with J.N.K. as follows:

> There has been – the house has not been paid for for almost a year and I made arrangements with the bank to try to get back into it. They told me unless this paperwork is filled out and signed by her, then they are not going to refinance or they are just going to foreclose on the house because they are not going to try and work with it.

*Id.* at 16. Regarding the incident at Sheetz, Appellant testified:

> I asked [the oldest daughter] to go over and ask her mom if she had talked to her lawyer about that house, because it's coming up soon to get the paperwork done. She ran over and talked to her mom and ran back over to me.
>
> At that time, [J.N.K.] stepped out of her car and walked to the back of her car. I did not step any closer to her, and she started yelling at me about she ain't signing this paperwork. She hasn't talked to her lawyer. She hasn't done this, going on. And all I said was, okay, and me and the girls walked into Sheetz.

*Id.* at 18.

Appellant claims that the foregoing evidence establishes that his intent was to communicate regarding the living arrangements and possible relocation of the parties' children. However, the trial court concluded Appellant's intent was not to discuss matters involving the children's well-being or custody schedule, but instead was to discuss with J.N.K. the outstanding issues regarding their jointly-held real property and to impress

upon her Appellant's desire to come to a quick resolution. We reach the same conclusion. The trial court found J.N.K.'s testimony more credible and we are not permitted to usurp the trial court's credibility determinations when the record supports those determinations. Here, when viewed in the light most favorable to the Commonwealth, the abovementioned testimony demonstrates that Appellant's intent was to shore up financial plans for the former marital residence. Although, at the time of the communication, Appellant's purported goal was to move into the home and eventually relocate the parties' children, the children's interests were remote and tangential. We agree with the trial court that Appellant communicated with wrongful intent through a third party. Thus, there was ample support in the record to establish each element of indirect criminal contempt at docket number No. MD-0000197-2013.

Next, we examine the text message sent on July 13, 2013. As previously mentioned, it read as follows:

> I also sent an email to your lawyer today about the house on Fourth Avenue. The bank said if you get paperwork done I told [your lawyer] about they will take your name off. So if you could please talk to her about it, me and the girls can start moving into it. Thanks. I will tell them. They said they love you.

N.T., 7/29/2013, at 6.

Again, there is no dispute that Appellant received notice of the PFA Order and that the PFA Order was sufficiently clear. Moreover, Appellant readily admits that he volitionally sent the text message at issue. Appellant

claims, however, that the trial court erred in determining his intent was wrongful because he "could not have been trying to gain an economic advantage because there was no economic value in this home" and "[h]is only motivation for communication regarding this home was for his children." Appellant's Brief at 4.

The trial court determined the text message did not relate genuinely to the children, but instead "was [sent] to discuss with [J.N.K.] the outstanding issues regarding their jointly-held real property and to impress upon her [Appellant's] desire to come to a quick resolution." Trial Court Opinion, 12/13/2013, at 6. We agree and discern no error. J.N.K. testified that the sale of the joint property was related to the parties' divorce. N.T., 7/29/2013, at 5. Appellant was prodding J.N.K. to move faster with "the paperwork" to transfer title on the house. While relocation with the children potentially loomed on the horizon, the main thrust of the communication was financially centered and focused upon the transfer of marital property. Financial issues surrounding the house had to be resolved before relocation could be considered or even discussed.

Moreover, Appellant knew that, at the time of the subject communications, J.N.K. was represented by an attorney. N.T., 7/29/2013, at 9. As previously stated, J.N.K. testified, regarding the communication sent through the parties' oldest daughter, that Appellant said, "You haven't talked to your attorney yet. Why haven't you talked to your attorney[?]" *Id.* at 14. According to the subsequent text message to J.N.K., Appellant

submitted paperwork regarding the sale of the marital home to J.N.K.'s attorney. He then communicated this fact to J.N.K. The foregoing demonstrates that Appellant knew to communicate with J.N.K.'s attorney, but contacted J.N.K. anyway when financial matters surrounding the house were progressing too slowly for him. Thus, we cannot discern a legitimate reason for the subject communication, other than to harass or annoy J.N.K. Accordingly, Appellant's communication satisfies the element of wrongful intent under the indirect criminal contempt statute. Hence, we affirm Appellant's conviction for indirect criminal contempt based upon text message communication at docket number No. MD-000212-2013. Accordingly, Appellant's first issue fails.[1]

_____

[1] We note that, at the hearing on the indirect criminal contempt charge, the trial court stated "[y]ou have been here [11] times. You have been convicted [11] times." N.T., 7/29/2013, at 20. The trial court also referenced Appellant's 11 prior violations of the PFA Order in its 1925(a) opinion. Trial Court Opinion, 12/13/2013, at 6. In reviewing the certified record, we could not find any evidence presented by the Commonwealth with respect to 11 prior violations of the PFA Order or prior convictions for indirect criminal contempt. However, the trial court would be permitted to take judicial notice of any prior violations and convictions. **See Commonwealth v. Brown**, 839 A. 2d 433, 435 (Pa. Super. 2003)("A court may take judicial notice of an indisputable adjudicated fact."); **see also** Pa.R.E. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") Moreover, Appellant's counsel did not object to this statement made by the trial court. Hence, assuming Appellant did have multiple violations of the PFA Order and/or convictions stemming from these violations, this fact bolsters the trial court's conclusion that Appellant's most recent communications were made with wrongful intent and therefore, constituted harassment.

In his second issue presented, Appellant contends that his sentence of 90 days of incarceration and a $300.00 fine "was extremely severe" because "[t]here were no threats or harassment of any kind." Appellant's Brief at 5-6. However, Appellant "acknowledge[s] that a violation of an [o]rder under [the] Protection from Abuse Act is punishable with incarceration of up to six months in jail and a $300[.00] fine[.]" *Id.* at 5. Upon review, we conclude that Appellant has waived this claim.

Appellant's issue implicates the discretionary aspects of sentencing. We previously determined:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (internal case citations omitted).

Appellant has not satisfied the procedural prerequisites for appellate review of his challenge to the discretionary aspects of his sentence. Appellant failed to include a separate Pa.R.A.P. 2119(f) statement in his appellate brief. "[W]hen the appellant has not included a Rule 2119(f) statement and the [Commonwealth] has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate, or enforce the requirements of Pa.R.A.P. 2119(f) *sua sponte, i.e.,* deny allowance of appeal." ***Commonwealth v. Kiesel***, 854 A.2d 530, 533 (Pa. Super. 2004). Here, the Commonwealth did not object to Appellant's omission of his Rule 2119(f) statement. However, our review of the record confirms that Appellant failed to raise his discretionary sentencing claim at his sentencing hearing or by way of a post-sentence motion. As such, Appellant did not satisfy the requirements to invoke this Court's jurisdiction and, thus, he waived his discretionary sentencing challenge.

Judgment of sentence affirmed.

President Judge Emeritus Ford Elliott and Judges Bowes, Shogan, Lazarus and Stabile join this Opinion.

President Judge Emeritus Bender files a Dissenting Opinion in which Judges Mundy and Ott join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/11/2016