J-A16025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMAR NEWELL | : | |
| | : | |
| Appellant | : | No. 125 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 23, 2020
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-MD-0000824-2019

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:             **FILED AUGUST 17, 2021**

Omar Newell (Appellant) appeals from the judgment of sentence entered in the Adams County Court of Common Pleas, after a trial court found him to be in indirect criminal contempt[1] of a Protection from Abuse (PFA) order, which prohibited him from contacting his ex-wife, Stephanie Newell (Stephanie).  Contemporaneous with this appeal, Appellant's counsel, Thomas R. Nell, Esquire, has filed a petition to withdraw from representation and an **Anders** brief.  **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago** 978 A.2d 349 (Pa. 2009).  The **Anders** brief presents a claim that the trial court erred in determining the evidence proved Appellant was in indirect criminal contempt when he sent items to his children,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 23 Pa.C.S. § 6114(a).

and not his ex-wife. For the reasons below, we grant counsel permission to withdraw and affirm the judgment of sentence.

On February 19, 2019, a PFA order was entered against Appellant in York County "by agreement without admission." *See* Final Protection from Abuse Order, 2/19/19, at 2 (unpaginated). Among other things, the order explicitly provided:

> 3. Except as provided in Paragraph 5 of this order [Appellant] is prohibited from having ANY CONTACT with [Stephanie] . . . either directly or indirectly, at any location, including but not limited to any contact at [Stephanie's] . . . place of employment. . . .
>
> 4. Except as provided in [P]aragraph 5 of this order, [Appellant] shall not contact [Stephanie], either directly or indirectly, . . . by telephone or by any other means, including through third persons.

*Id.* at 2-3. Paragraph 5 of the order concerned the parties' children. Specifically, it granted temporary sole legal and physical custody of the parties' children to Stephanie, pending a conciliation conference, and noted the parties agreement that Appellant's custody would be supervised by a third party, selected by counsel. *Id.* at 3. The order was effective until February 19, 2022.

In May of 2019, Appellant was charged with indirect criminal contempt after he sent an edible arrangement to Stephanie's workplace on April 11, 2019. On June 26, 2019, Appellant entered a guilty plea to one count of indirect criminal contempt, and the trial court sentenced him to the agreed-upon term of six months' probation. No appeal was filed.

However, on March 25, 2020, Appellant filed a timely, *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA),[2] asserting plea counsel was ineffective for failing to advise him that indirect criminal contempt was a deportable offense. ***See*** Appellant's Motion for Post Conviction Relief, 3/25/20, at 4. The Commonwealth agreed that Appellant was entitled to relief, and, on July 23, 2020, the trial court granted Appellant's PCRA petition and vacated his conviction of indirect criminal contempt. Order, 7/23/20.

On December 23, 2020, Appellant appeared before the trial court for an indirect criminal contempt hearing. The trial court summarized the testimony presented at the hearing as follows:

> . . . Kirsten Davis (hereinafter "Davis"), an employee from Edible Arrangements in Hanover, Pennsylvania, [testified that] she was working on April 11, 2019 and received a telephone order for an edible arrangement. Davis testified that the name on this particular order was Kevin Orverx, the telephone number provided was 484-947-4145, and the number on the credit card used to place the order ended in 9647. The edible arrangement was ordered for Bethany Newell at WellSpan, 820 Chambersburg Road, Gettysburg, Pennsylvania 17325. This information was included within Commonwealth Exhibit 1, written records from Edible Arrangements. After the order was placed, the person who placed the order called Edible Arrangements six to seven times and asked if the edible arrangement was delivered. Davis testified that the caller "was getting more stern and [I] guess angry about the situation."
>
> . . . [Stephanie testified] that Appellant was her ex-husband and she was the protected plaintiff in the February 19, 2019 final PFA order. Primary custody of the children belonged to [Stephanie] and any visits between the children and Appellant were supervised and arranged through a third party determined by [Stephanie's]

---

[2] 42 Pa.C.S. §§ 9541-9546.

attorney. [Stephanie] testified that on April 11, 2019 she was working at WellSpan in Gettysburg and received an edible arrangement. The edible arrangement order included a note which read "[h]ope you are having a nice day and all is well" but did not include the name of the person who sent the edible arrangement. After receiving the order, [Stephanie] reached out to family and friends to ensure that nobody else had sent the edible arrangement.

[Stephanie] further testified that Appellant had Instagram and Facebook accounts under different names. [Stephanie] testified, in the past, Appellant had used the name Kevin Orverx. [Stephanie] also testified that she was familiar with the phone number 484-947-4145, which was Appellant's cellphone number. [Stephanie] testified that Appellant knew [she] worked at WellSpan in Gettysburg.

Christina Walker (hereinafter "Christina"), [Stephanie's] sister, testified that on April 18, 2019[,] she received an Instagram notification for a friend request from Appellant. Christina knew the account belonged to Appellant because Instagram was linked to her phone contacts and Appellant's name appeared with the notification. Christina took a screenshot of the notification, which read "Omar Newell, one of your contacts, is on Instagram as @kevinorvis717.["]

Joshua Sheaffer (hereinafter "Sheaffer"), the Assistant Records Manager at the Cumberland County Prison, testified that Appellant was incarcerated at Cumberland County Prison from October 20, 2019 to December 30, 2019. Sheaffer testified that Appellant had a Bank of America Visa debit card, ending in 9647, in his possession while at Cumberland County Prison and that a photocopy of the card was created.

Appellant testified and admitted he sent the edible arrangement to WellSpan on April 11, 2019 but [claimed] that the edible arrangement was meant for the children and not for [Stephanie].

Trial Ct. Op., 3/18/21, at 2-4 (record citations omitted).

At the conclusion of the hearing, the trial court found that Appellant was in indirect criminal contempt of the February 2019 PFA. That same day, it imposed a sentence of time-served to six months' imprisonment, with parole

"upon the successful completion of a home plan." Order, 12/23/20, at 1 (unpaginated). The trial court also extended the PFA for three years. *Id.* at 2. This timely appeal follows.[3]

When counsel files a petition to withdraw and accompanying ***Anders*** brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. ***Commonwealth v. Bennett***, 124 A.3d 327, 330 (Pa. Super. 2015). An attorney seeking to withdraw from representation on appeal

> must: 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Pursuant to ***Santiago***, counsel must also:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

[3] Appellant complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). We note that the Commonwealth did not file an appellee's brief in this matter.

***Id.****, quoting **Santiago***, 978 A.2d at 361.

Here, the brief and petition to withdraw filed by Attorney Nell sufficiently comply with the requirements of ***Anders*** and ***Santiago***.[4]  ***See Cartrette***, 83 A.3d at 1032.  Moreover, Attorney Nell attached a copy of a letter he sent to Appellant, advising him of his right to retain new counsel or file a *pro se* brief.  Appellant has not filed any response.  Therefore, we proceed to examine the issue identified in the ***Anders*** brief, and then conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous."  ***See Commonwealth v. Yorgey***, 188 A.3d 1190, 1196 (Pa. Super. 2018) (*en banc*) (quotation omitted).  If we agree with counsel's assessment, "we may grant counsel's request to withdraw and dismiss the appeal[.]"  ***Id.*** (citation omitted).

The sole issue identified in the ***Anders*** brief challenges the sufficiency of the evidence supporting Appellant's conviction of indirect criminal contempt.  As with any sufficiency claim, our standard of review is well-established:

> [W]e must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense

---

[4] We note counsel's filing is titled "Brief of Appellant," as opposed to "***Anders*** Brief."  Nevertheless, as noted above, the brief satisfies the requirements of ***Anders*** and ***Santiago***, and counsel clearly expressed his desire to withdraw in a separately filed motion.  Thus, we will treat the filing as an ***Anders*** Brief.

beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

*Commonwealth v. Taylor*, 137 A.3d 611, 614 (Pa. Super. 2016) (*en banc*).

Moreover, where, as here, the trial court is the finder of fact, "we are not permitted to usurp the trial court's credibility determinations when the record supports those determinations." *Id.* at 616.

When considering a conviction of indirect criminal contempt, we must bear in mind the following:

> A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." . . . To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007) (citations omitted).

Here, Appellant insists he did not act with wrongful intent because the edible arrangement was intended for his children, not Stephanie. *Anders* Brief at 11. He testified "that he has sent edible arrangements to his two daughters, [M.N.] and [E.N.], on prior occasions, and that they loved them." *Id.* Moreover, Appellant maintains he sent them to Stephanie's office because he "did not have another address" for the children. *Id.*

The trial court rejected Appellant's argument as follows:

The final PFA order was sufficiently definite, clear, and specific to Appellant as to leave no doubt of the conduct prohibited. Appellant was clearly notified in the final PFA order that Appellant was prohibited from having any contact with [Stephanie], either directly or indirectly, at any location, and that Appellant shall not contact [Stephanie], either directly or indirectly, by telephone or by any other means, including through third persons. Appellant had notice of the final PFA order which was served upon Appellant in York County. Furthermore, Appellant's act in sending this edible arrangement to [Stephanie] at her workplace was volitional[;] it was Appellant's decision and choice to send the edible arrangement to the [Stephanie] at WellSpan in Gettysburg.

The Commonwealth proved that Appellant acted with wrongful intent when Appellant willfully sent the edible arrangement to [Stephanie] at [her] workplace. Appellant's wrongful intent is illustrated through the fact Appellant did not provide his correct name when he placed the order with Kirsten Davis at Edible Arrangements. Furthermore, Appellant did not provide his name on the message delivered with the edible arrangement, nor did he specify that the edible arrangement was to be delivered to Appellant's children. Furthermore, Appellant sent the edible arrangement to [Stephanie's] place of work, not her residence and the residence of the children. Appellant's wrongful intent is also corroborated through the testimony of Kirsten Davis who testified Appellant called the Edible Arrangement's store six to seven times on April 11, 2019[,] questioning whether the edible arrangement had been delivered and Appellant's tone was stern and angry. All of these facts corroborate that Appellant intended to circumvent the no contact directive of the final PFA order.

Appellant argues that he did not act with wrongful intent because he was sending the edible arrangement to his children not [Stephanie]. This Court finds that Appellant's testimony concerning this issue is not credible and is not supported by the other corroborating testimony in this case.

Trial Ct. Op. at 6-7.

Upon our review of the record, we agree. The PFA order clearly prohibited Appellant from having **any contact** with Stephanie. Appellant's

- 8 -

act of ordering an edible arrangement for delivery to Stephanie's workplace constitutes indirect contact through a third party. Significantly, the trial court found incredible Appellant's assertion that the arrangement — delivered anonymously to Stephanie's place of business — was intended for his children. Appellant's attempt at subterfuge supports the trial court's credibility determination, which we will not question on appeal. *See Taylor*, 137 A.3d at 616. Accordingly, Appellant's challenge to the sufficiency of the evidence fails.[5]

Moreover, our independent review of the record reveals no non-frivolous issues to be raised on appeal. Thus, we affirm the judgment of sentence and grant Attorney Nell's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/17/2021

---

[5] Because the trial court found Appellant's testimony that he intended to send the arrangement to his children incredible, we need not address its alternative finding that Appellant's actions would have be violative of the order even if he did intend to send the arrangement to his children.