J-S02033-22
J-S02034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| OLGA SEGREAVES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSS SEGREAVES | : | |
| | : | |
| Appellant | : | No. 1716 EDA 2021 |

Appeal from the Order Entered May 14, 2021
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-PF-2016-00811

| | | |
|---|---|---|
| OLGA SEGREAVES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSS SEGREAVES | : | |
| | : | |
| Appellant | : | No. 1717 EDA 2021 |

Appeal from the Order Entered June 25, 2021
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-PF-2016-00811

BEFORE:   OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED MAY 2, 2022**

We review together these two appeals by Ross Segreaves (Appellant),

from separate indirect criminal contempt (contempt) orders, entered in the

Northampton County Court of Common Pleas at the same Protection from

Abuse[1] (PFA) docket. The relevant PFA order is in favor of Appellant's ex-wife, Olga Segreaves (Appellee), and their minor children.[2] Appellant committed these PFA violations while incarcerated on a stalking sentence, where the victim was Appellee, as well as prior contempt adjudications. At 1716 EDA 2021, Appellant challenges the discretionary aspects of his sentence of 10.5 years' imprisonment and a consecutive five years' probation, entered on May 14, 2021, following his 46 counts of contempt. At 1717 EDA 2021, Appellant challenges the June 25, 2021, sentence of six month's imprisonment, following an additional adjudication of indirect criminal contempt. Appellant argues: (1) the court erred in conducting his hearing by video call; and (2) the evidence was insufficient to support a finding of contempt. We affirm.

## I. Procedural History

The trial court has issued two thorough opinions, including a 75-page opinion at 1716 EDA 2021. We glean the following procedural history therefrom, as well as from this Court's December 17, 2021, memorandum[3] affirming a prior contempt adjudication.

---

[1] *See* 23 Pa.C.S. §§ 6101-6122 (Protection from Abuse Act).

[2] Appellant is represented by the same attorney, Matthew Deschler, Esquire, at both appeals, and has filed separate briefs. Appellee has not filed any brief.

[3] *Segreaves v. Segreaves*, 888 EDA 2021 (unpub. memo.) (Pa. Super. Dec. 17, 2021).

Appellee first obtained a temporary PFA order against Appellant on September 21, 2016; this was ultimately entered as a final PFA order. The order initially provided that Appellant could contact Appellee regarding the custody of their minor children. However, the order was subsequently amended to prohibit Appellant "from having **ANY CONTACT**" with Appellee, "either directly or indirectly through a third party . . . ." *Segreaves*, 888 EDA 2021 at 2 n.2, *quoting* Order, 1/24/17, at ¶ 3 (emphasis in order). The final PFA order was initially set to expire on November 18, 2019. "[B]y agreement of the parties, the . . . Order was extended for an additional three years and is now in effect until November 22, 2022."[4] Trial Ct. Op., 7/29/21, at 9.

"Between November 18, 2016 and December 14, 2020, the trial court found Appellant guilty of [10] charges of indirect criminal contempt for violating the PFA order[.]" *Segreaves*, 888 EDA 2021 at 3.

Additionally, on June 1, 2018, Appellant pleaded guilty to stalking[5] at trial docket CP-48-CR-0001443-2018. This charge was based on Appellant's sending Appellee text messages more than 20 times a day, over an 18-day

---

[4] On September 30, 2020, upon Appellee's request, the trial court modified the PFA order to prohibit Appellant from contacting three of her friends, to whom Appellant "had sent . . . numerous letters from prison concerning" Appellee. Trial Ct. Op., 7/29/21, at 9.

[5] 18 Pa.C.S. § 2709.1(a)(2).

period.[6] Appellant received a sentence of three to six months' imprisonment, to be followed by 2 years' probation.

We note that at a December 14, 2020, contempt hearing, the trial court "warned Appellant that he would face additional prison time if 'in any way, shape, or form' he contacted Appellee, 'or anyone associated with [Appellee] for any reason[.]'" *Segreaves*, 888 EDA 2021 at 3-4 (citation omitted). Nevertheless, two days thereafter, on December 16th, Appellee filed yet another indirect criminal contempt petition. Appellee alleged Appellant sent a letter to her friend, asking the friend to inform Appellee of "various medical conditions that Appellant believed were affecting him." *Id.* at 4. The friend found this letter "disturbing." *Id.* On March 12, 2021, the trial court found Appellant guilty of contempt and sentenced him to six months' incarceration. Appellant appealed to this Court, arguing he did not have wrongful intent, and this Court affirmed. *Id.* at 8-9, 11.

## II. 1716 EDA 2021 — 46 Contempt Adjudications on May 14, 2021

The appeal at 1716 EDA 2021 pertains to 46 indirect criminal contempt adjudications entered on May 14, 2021, arising from three separate petitions filed by Appellee. In the first petition, filed March 12, 2021 — the same day

---

[6] Appellant did not take a direct appeal, but timely filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, claiming ineffective assistance of counsel. The trial court denied relief, and this Court affirmed. *Commonwealth v. Segreaves*, 2278 EDA 2019 (unpub. memo.) (Pa. Super. Oct. 21, 2020).

as the last contempt hearing, summarized above — Appellee "alleged that she received copies of letters that [Appellant, who was in prison,] had sent to his mother[,]" asking her to contact Appellee. Trial Ct. Op., 7/29/21, at 25. These letters, *inter alia*: requested "permission to come home;" "mentioned shooting himself or [Appellee] for being so insensitive and not wanting to reconcile;" warned, "The last thing you will hear is the phone ring and a gunshot;" and referred to Appellee's boyfriend. *Id.* at 25-26. Appellee felt afraid for her life, her boyfriend's life, as well as her children's well-being. *Id.* at 26. Appellee attached 13 letters to this petition. *Id.* at 28.

Appellee filed a second indirect criminal contempt petition on April 21, 2021, attaching 15 letters, from Appellant, addressed to her and 12 letters to the children. Trial Ct. Op., 7/29/21, at 27-28. Appellee claimed Appellant was "harassing her" and repeatedly requested her to ask the trial judge "about his release." *Id.* at 26.

Finally, Appellee filed a third indirect criminal contempt petition on May 5, 2021, attaching four letters, sent by Appellant, addressed to her and 6 letters addressed to the children. "The letters to the children were sexually graphic and spoke of the former marital relationship between" Appellant and Appellee. Trial Ct. Op., 7/29/21, at 27. The letters to Appellee warned she "had better stop 'pissing off' [Appellant] because he knows people in prison who would do favors for him." *Id.* In sum, Appellee submitted 50 letters for the trial court's review.

The trial court conducted a contempt hearing on May 14, 2021. Appellant appeared *via* video and was represented by counsel.[7] Appellee testified the letters she and the children received from Appellant were "frightening." N.T., 5/14/21, at 14. Appellant did not testify or present any evidence. The court found him guilty of 46 counts of contempt.[8]

This matter proceeded immediately to sentencing, where Appellant presented his prison medical record. *See* N.T., 5/14/21, at 61; Trial Ct. Op., 7/29/21, at 28. Appellant's counsel argued that Appellant has bipolar disorder and is taking Lithium, and his conduct "is affected by the very real mental disorder that" should mitigate his sentence. N.T., 5/14/21, at 62. The trial court imposed the following sentences: (1) six months' imprisonment on each of 21 counts, to run consecutively to any sentence previously imposed and consecutive to each other; (2) six months' probation on each of 10 counts, likewise consecutive to any prior sentence and consecutive to each other; and (3) a fine of $100 on each on 15 counts. Appellant's aggregate sentence was thus 10.5 years' imprisonment, to be followed by 5 years' probation, and fines of $1,500.

---

[7] Attorney Deschler represented Appellant at the underlying hearings and on appeal.

[8] Specifically, the trial court found Appellant guilty of: (1) nine counts of contempt for the March 12, 2021, indirect criminal contempt petition; (2) 27 counts of contempt for the April 21st petition; and (3) 10 counts of contempt for the May 5th petition. Trial Ct. Op., 7/29/21, at 31.

The trial docket indicates Appellant filed a timely post-sentence motion on May 14, 2021.[9] The trial court denied it on July 29th. Appellant filed a timely notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

### III. 1717 EDA 2021 — Contempt Adjudication on June 25, 2021

The appeal at 1717 EDA 2021 pertains to an additional indirect criminal contempt adjudication entered on June 25, 2021. This adjudication arose from a petition for indirect criminal contempt filed by Appellee on June 9, 2021. Appellee averred she received a letter from someone named Kyle McDaniel — who she did not know — from the Mahanoy State Prison. Appellant was housed at the same prison. *See* N.T., 6/25/21, at 7. "The letter contain[ed] Bible verses about women and . . . anger, which are similar in nature to Bible verses [Appellant] has included in his own letters to" Appellee. Trial Ct. Op., 7/29/21, at 25 n.5.

The trial court held a hearing on the petition on June 25, 2021. Appellant again appeared *via* video. At the beginning of the hearing,

_____

[9] We note the certified record does not include the post-sentence motion itself, which was filed on May 24, 2021. However, the record does include Appellant's "Memorandum in Support of Post-Sentence Motion," filed on June 4th. The memorandum stated that Appellant's post-sentence motion requested leave to file a supplemental motion following receipt and review of the hearing transcript, and the trial court permitted Appellant until June 4th to file such supplemental motion. Appellant's Memorandum in Support of Post-Sentence Motion, 6/4/21, at 1.

Appellant's counsel argued the courts were no longer conducting trials and guilty plea and sentencing proceedings by video, and that Appellant should appear "in person if [he is] subject . . . to a potential six-month jail sentence." N.T., 6/25/21, at 3-5. Counsel acknowledged, however, that there was no court order prohibiting virtual or video hearings, and he did not cite legal authority for his position. *Id.* at 4, 6. The trial court overruled the objection, pointing out the hearing had been scheduled for weeks, and Counsel had an opportunity to communicate with Appellant. *Id.* at 4-5.

Appellee testified she did not know McDaniel, the sender of the letter, and there was no reason why someone at the prison would have her address. N.T., 6/25/21, at 7.

McDaniel testified *via* video. He was incarcerated "due to a stolen vehicle and aggravated assault with bodily injury to an officer." N.T., 6/25/21, at 8. McDaniel acknowledged he wrote to Appellee, explaining why:

> [Appellant and I] had discussions, several of which involved around a man and his wife and marriage pertaining to the [B]ible. And I had took it upon myself to offer some advice to [Appellee] so that it would provide [Appellant] some solace in these times of calamity and trouble that we go through here as inmates.

*Id.* McDaniel testified that he asked Appellant for Appellee's address, and McDaniel denied that Appellant requested him to write the letter. *Id.* at 9, 11. Additionally, when asked whether Appellant told him that he (McDaniel) could not contact Appellee on Appellant's behalf, McDaniel stated, "[T]hat part he was unclear of." *Id.* at 9. McDaniel further testified that when he told

Appellant that he wished to write to Appellee, Appellant responded, "[O]kay, that's not me doing it." *Id.* at 12. McDaniel acknowledged he knew, when he sent the letter, that Appellant was incarcerated for violating a PFA order that Appellee had against him. *Id.* at 10.

Appellant did not testify. The trial court found him guilty of indirect criminal contempt and imposed a sentence of six months' imprisonment. Appellant filed a timely post-sentence motion, requesting a new hearing on the ground the trial court improperly conducted the June 25, 2021, hearing by video. Appellant cited, for the first time, a June 21, 2021, Pennsylvania Supreme Court order, which provided, "Effective July 6, 2021, operation of the Unified Judicial System shall return to pre-pandemic status[,]" and "[a]ll courtrooms . . . shall be fully opened." Appellant's Motion for Post-Sentence Relief, 7/6/21, at 1-2. Additionally, Appellant argued the evidence was insufficient to sustain his contempt adjudication. In support, he denied he requested McDaniel to write a letter to Appellee, and claimed McDaniel did so "at his own initiative." *Id.* at 6.

The trial court denied Appellant's motion on August 2, 2021. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

## IV. 1716 EDA 2021 — Discretionary Aspect of Sentencing

With respect to the 46 contempt findings for sending letters to Appellee and the parties' children, Appellant raises a sole issue for our review:

Did the Trial Court abuse its discretion in sentencing Appellant?

Appellant's Brief, 1716 EDA 2021, at 4.

We first note: "A criminal contempt proceeding arising under the Protection from Abuse Act is criminal in nature, and the Commonwealth must prove every element beyond a reasonable doubt. The sanction of criminal contempt, whether direct or indirect, is an actual criminal conviction." *Commonwealth v. Moore*, 978 A.2d 988, 992 (Pa. Super. 2009) (citations omitted).

Appellant argues the aggregate sentence of 10.5 years' imprisonment, to be followed by 5 years' probation, is manifestly and unduly harsh and excessive. Appellant's Brief, 1716 EDA 2021, at 15. He asserts the trial court abused its discretion in: (1) imposing separate sentences "for each letter when multiple letters were sent on the same day and multiple letters were received by [Appellee] on the same day[;]" (2) imposing an "aggregate term of incarceration which is greater than the highest minimum sentence for a first-degree felony other than rape or murder[;]" and (3) failing to consider the mitigating factor of his mental health, including his bipolar disorder and prescription for Lithium. *Id.* at 16. Appellant acknowledges some of the letters were manipulative, bizarre, and "genuinely obscene." *Id.* However, he maintains, they were "merely letters[,]" the "threats of violence . . . were against himself," and "dial[ling] all criminal incidents to a 10 [sic] depreciates the seriousness of truly heinous crimes." *Id.* at 16-17. Appellant also

maintains he lacked the capability to physically assault Appellee, as "he is

incarcerated." *Id.* at 16. We conclude no relief is due.

We note the relevant standard of review:

When reviewing a challenge to the discretionary aspects of sentencing, we determine whether the trial court has abused its discretion. . . .

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en*

*banc*) (citations omitted).

This Court has explained:

Before this Court can address . . . a discretionary challenge [to a sentence], an appellant must comply with the following requirements:

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902[,] 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Caldwell*, 117 A.3d at 768 (some citations omitted).

- 11 -

"In determining whether a substantial question exists, this Court . . . look[s] to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable." *Caldwell*, 117 A.3d at 770. "A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question." *Id.* at 769. On the other hand, "[t]his Court has . . . held that 'an excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question.'" *Id.* at 770.

Here, Appellant filed a timely notice of appeal, and included his above arguments in a timely post-sentence motion. *See Caldwell*, 117 A.3d at 768. In addition, his brief properly includes a Pa.R.A.P. 2119(f) a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. *See id.*

However, to the extent Appellant challenges the consecutive nature of his sentences, such a claim does not raise a substantial question. *See Caldwell*, 117 A.3d at 769. However, Appellant's claim of an excessive sentence, coupled with his argument that the trial court failed to consider the mitigating factor of his mental health, does raise a substantial question invoking our review. *See id.* at 770. We conclude, however, that the issue is meritless.

First, we disagree with Appellant's claim that the court did not consider or overlooked his mental health. As stated above, Appellant presented, at the May 14, 2021, hearing, his prison medical record, and argued his conduct was affected by his bipolar disorder. *See* N.T., 5/14/21, at 61-62. The trial court acknowledged this argument, but reasoned Appellant "is clearly being treated for [his mental illness] in state prison[, yet] still writes these letters." *Id.* at 75.

The trial court also stated on the record the reasons for its sentence:

> [Appellant] has not been compliant with the PFA order since its inception. . . .
>
> Consistently since 2016, [Appellant] has violated [the PFA order] through communications with [Appellee] that have been incessant and unrelenting in nature, . . . continuing while he is incarcerated in state prison for violating the PFA Order.
>
> \*    \*    \*
>
> There is . . . an alarming escalation in tone in his correspondence and he lacks all boundaries even those imposed on him by law.
>
> [Appellant] intends to manipulate, annoy, alarm, control, scare, blackmail, harass, shame, degrade, threaten, cajole, and stalk. He attempts to use his minor children who are 13 and 10 as a medium to communicate with, manipulate, control, harass, stalk, shame, degrade, and annoy [Appellee]. And he does this through the children in sexually graphic and profane terms using language no child should hear much less from a parent.
>
> [Appellant] shows no regard for their emotional well-being and threatens to commit suicide in letters to them and blames their mother.
>
> \*    \*    \*

[Appellant] has communicated with numerous third parties at their homes and places of employment in efforts to enlist them to help communicate with [Appellee] in violation of the PFA order which resulted in at least one amendment to the order in the past.

As relayed throughout, [Appellant's] behavior has been, by his own admission, obsessive. He is a danger to [Appellee], to their children, to himself, and possibly others. . . .

For prior contempts, the court has explored a range of remedies in an effort to deter [Appellant] from this misconduct and to bring him in compliance with the Court's order. He's been fined, sentenced to probation, sentenced to county prison, and to state prison. Nothing has deterred him from continuing to contact [Appellee] directly and through third parties.

Simply put, this PFA order must be enforced with full force and authority of the law with respect to [Appellant]. It is necessary to vindicate the authority of the court. It is necessary to protect [Appellee] and her children. And it is necessary to vindicate and enforce the purpose of the [P]rotection from [A]buse statute.

N.T., 5/14/21, at 73-77.

On appeal, Appellant fails to acknowledge the trial court's extensive discussion, and indeed, ignores the emphasis on his prior contempt adjudications and the fact that he wrote the letters while imprisoned for the very same behavior against Appellee. Appellant's dismissiveness as to the seriousness of his offenses likewise ignores the trial court's finding that he has threatened to kill Appellee, and he has sent "sexually graphic and profane" letters to his minor children in order to "manipulate, control, harass, stalk, shame, [and] degrade" Appellee, and to threaten to commit suicide. *See* N.T., 5/14/21, at 74-75.

Additionally, although the trial court found Appellant guilty of 46 counts of contempt, it imposed prison time on 21 counts, representing "the most egregious, profane and threatening letters." **See** Trial Ct. Op., 7/29/21, at 34. Appellant "was not entitled to a volume discount for these numerous and serious crimes." **See Caldwell**, 117 A.3d at 772. In light of all the foregoing, we conclude Appellant has failed to show an abuse of discretion on the part of the trial court. **See id.** at 770.

## V.  1717 EDA 2021 — Sufficiency of Evidence & Virtual Hearing

With respect to the contempt adjudication related to inmate McDaniel's letter, Appellant presents two issues for our review:[10]

> 1.  Did the Trial Court commit an error of law in holding the trial in a way such that Appellant was only present through remote audio-video link and not in person?
>
> 2.  Was the evidence insufficient to convict Appellant of indirect criminal contempt?

Appellant's Brief, 1717 EDA 2021, at 4.

First, Appellant avers he "was denied his constitutional and rule-based safeguards" when the trial court conducted the June 25, 2021, hearing with him appearing by video. Appellant's Brief, 1717 EDA 2021, at 15. Appellant again cites the Pennsylvania Supreme Court's order of June 21, 2021, which declared that effective July 6th, the courts shall return to pre-COVID-19

---

[10] We have reordered Appellant's issues for ease of review.

pandemic status and fully reopen. *Id.* at 11. He acknowledges his hearing was held before the July 6th effective date, but maintains "the fact of [the order's] issuance demonstrates that the [Supreme Court] no longer believed that restrictions upon a defendant's constitutional, statutory, and rule-based rights [were] justified as a matter of public policy." *Id.* at 16. Appellant also refers to Pa.R.Crim.P. 119, which provides a court may not use audio-video communication at, *inter alia*, a trial or sentencing hearing. *See id.* at 12, *citing* Pa.R.Crim.P. 119(A)(4), (5). Finally, Appellant reasons he was unable to communicate with his attorney during the hearing. Appellant's Brief, 1717 EDA 2021, at 15. We conclude no relief is due.

First, Appellant acknowledges the provisions in the Supreme Court's order did not take effect until July 6, 2021, 12 days **after** the June 25th hearing. With respect to whether the order nevertheless indicated the Court's belief, that "restrictions" were no longer justified, we would agree with the trial court that had the Court intended to terminate pandemic procedures sooner, "it certainly could have and would have so stated in its June 21, 2021 Order." *See* Trial Ct. Op., 8/2/21, at 9. Additionally, Appellant does not dispute the trial court's point that although the hearing had been scheduled for weeks, he did not raise any challenge until the start of the hearing. *See* N.T., 6/25/21, at 4-5. Thus, we decline to grant relief.

Appellant's second issue is a challenge to the sufficiency of the evidence. First, he reasons the PFA order was not sufficiently clear that it prohibited him

from providing another person with Appellee's contact information. Appellant's Brief, 1717 EDA 2021, at 9. Appellant also insists there was no testimony offered that he knew McDaniel intended to write to Appellee. *Id.* at 9-10. He concludes that "at most," he is guilty of providing Appellee's address, upon request, to another inmate. *Id.* at 8. Finally, Appellant challenges the trial court's credibility determinations as inconsistent, where the court believed McDaniel obtained Appellee's address from Appellant and he mailed Appellee a letter, but the court found he "lie[d] about everything else." *Id.* at 9-10. No relief is due.

We consider the relevant standard of review:

"[W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court decision." We will reverse a trial court's determination only when there has been a plain abuse of discretion.

*Commonwealth v. Kolansky*, 800 A.2d 937, 939 (Pa. Super. 2002) (citations omitted).

This Court has stated:

"Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." To establish indirect criminal contempt, the Commonwealth must prove:

1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Commonwealth v. Taylor***, 137 A.3d 611, 614-15 (Pa. Super. 2016) (*en banc*) (citations omitted). Additionally, we note:

> "When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." . . .
>
> [T]he trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence."

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237 (Pa. 2007) (citations omitted and paragraph break added).

Here, the trial court observed that the Bible verses in McDaniel's letter were similar to those in "dozens of letters" previously sent by Appellant to Appellee. Trial Ct. Op., 8/2/21, at 12 n.9. The court specifically found McDaniel's testimony — that Appellant did not request him to write the letter — was not credible. ***Id.*** at 14. Contrary to Appellant's claim that the trial court could not accept portions of a witness' testimony, while disbelieving other portions, here, the trial court was free to believe all, part, or none of McDaniel's testimony. ***See Ratsamy***, 934 A.2d at 1237. On appeal, this Court may not disturb those credibility findings.

Furthermore, the trial court found that even if it believed McDaniel, the court would find Appellant's providing him with Appellee's address, "for the purpose of that inmate sending her correspondence concerning [Appellant] is . . . itself . . . a violation of the PFA Order." Trial Ct. Op., 8/2/21, at 15. The

- 18 -

court found "patently absurd" Appellant's claim that the PFA order was not sufficiently clear to prohibit him from providing another person with Appellee's contact information. *Id.* at 16-17. The court reasoned the "fact that [Appellant] was not the technical 'sender' of the letter is inconsequential," as the PFA order clearly provides:

> [Appellant] is prohibited from having **ANY CONTACT** WITH [Appellee]. . . .
>
> **[Appellant] (either directly or indirectly through a third party) shall not contact [Appellee] by oral, nonverbal, written or electronic means[.]** . . .

*Id.* at 15. The trial court's findings are supported by the record, where McDaniel also testified that he knew Appellant was serving a sentence for violating a PFA order that protected Appellee. Again, we do not disturb the court's findings of fact, and conclude the evidence was sufficient to support the contempt finding. *See Ratsamy*, 934 A.2d at 1237.

### VI. Conclusion

For the foregoing reasons, we affirm the indirect criminal contempt orders at both 1716 EDA 2021 and 1717 EDA 2021.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2022

- 19 -