J-S18036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARTHUR MARTIN | : | |
| | : | |
| Appellant | : | No. 1253 WDA 2024 |

Appeal from the Judgment of Sentence Entered July 3, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001461-2021

BEFORE:  DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: June 18, 2025**

Appellant, Arthur Martin, appeals *nunc pro tunc* from the judgment of sentence imposed following the revocation of his probation.[1] On appeal, Appellant contends the violation of probation (VOP) court abused its discretion when it resentenced Appellant to four years to eight years in prison.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On October 6, 2020, the police filed a criminal complaint against Appellant in connection with the October 5, 2020, strangulation of the victim.  On November 1, 2022, Appellant, represented by counsel, entered a guilty plea to one count of

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  As discussed *infra*, Appellant's appeal rights were reinstated via the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.

strangulation, 18 Pa.C.S.A. § 2718(a)(1). On this same date, the trial court sentenced Appellant to five years of restrictive probation with the first two years to be served on electronic home monitoring. The trial court directed that Appellant have no contact with the victim. Also, the trial court ordered Appellant to undergo a drug and alcohol evaluation, as well as a mental health evaluation, and complete any treatment recommended by these assessments. Appellant was directed to successfully complete a Batterers' Intervention Program. Appellant filed neither post-sentence motions nor a direct appeal.

On June 16, 2023, following a **Gagnon I**[2] hearing, the hearing officer found probable cause that Appellant violated his probation by committing a new crime. On July 3, 2024, Appellant proceeded to a **Gagnon II** hearing at which the Commonwealth established Appellant violated his probation because he was arrested for and pled guilty to criminal trespass as to a different victim, and for this new offense, he was sentenced to five months to ten months in jail, to be followed by two years of probation. N.T., 7/3/24, at 2-3.

The VOP court indicated it had a pre-sentence investigation ("PSI") report, which was dated June 24, 2024. **Id.** at 2. The VOP court acknowledged Appellant is "unable to read," and, thus, the VOP court asked

---

[2] **See Gagnon v. Scarpelli**, 411 U.S. 778, 782 (1973) (holding that due process requires that a probationer be given a preliminary (**Gagnon I**) and final (**Gagnon II**) hearing prior to revoking probation).

Appellant if his attorney had read the PSI report to him. *Id.* at 3. Appellant answered affirmatively. *Id.* The VOP court indicated it thoroughly reviewed the PSI report. *Id.* at 6.

Appellant's counsel indicated Appellant is sixty-four years old, and prior to the court-ordered drug and alcohol evaluation and treatment at First Step, he had never been in "any kind of drug and alcohol treatment." *Id.* Appellant's counsel acknowledged that Appellant did not successfully complete First Step, and she averred there is "an issue with addiction." *Id.* She noted that Appellant was advised to enter an inpatient program for drug and alcohol treatment after he failed First Step. *Id.* at 7. She argued that Appellant's addiction has been a "catalyst for other behavior." *Id.* at 6.

Appellant's counsel noted that Appellant suffered a serious head injury when he was thirteen years old, has a scar on his head from the injury, and experiences migraines from the injury. *Id.* She acknowledged Appellant had "absconded for a period of time." *Id.* She noted that Appellant was employed by a concrete company, and he had a home. *Id.* at 7. Appellant's counsel indicated that Appellant "does not know how to read or write." *Id.* She contended that Appellant does not have the tools to get himself into an inpatient program, and, thus, he failed to take the appropriate steps to address his addiction problems. *Id.*

Appellant's counsel acknowledged that Appellant's instant case, as well as the new case, are "serious," and Appellant battered more than one victim.

- 3 -

*Id.* She noted Appellant successfully completed the Batterers' Intervention Program, and she "hopes he has gained some insight on behavior when it comes to dealing with [situations where] he finds out someone is cheating on him or whatever reason that the appropriate response is not how he responded." *Id.*

Appellant's counsel requested that the VOP court resentence Appellant to some type of long-term inpatient program. *Id.* at 8. She reiterated that Appellant has never had the opportunity to be in an inpatient treatment program to address his addiction issues. *Id.* She argued that a state prison term will benefit neither Appellant nor society, and Appellant deserves a chance to prove that he can address the issues, which resulted in the instant revocation of probation. *Id.*

In response, the Commonwealth indicated that Appellant was twice given the opportunity to go into inpatient treatment, and he was given the opportunity to complete treatment through First Step. *Id.* However, Appellant failed to do so. *Id.* The Commonwealth noted that, in the instant matter, within two weeks of Appellant starting electronic home monitoring, he had issues at First Step, so he was not "even on the right track to complete the two years." *Id.* at 9. The Commonwealth argued Appellant had difficulties submitting to drug and alcohol treatment from the beginning, and he was in violation. *Id.*

The Commonwealth noted that Appellant had proceeded to an initial *Gagnon I* hearing in June of 2023, and during this hearing, the parties agreed that Appellant could remain on probation and return to First Step. *Id.* However, at the end of July of 2023, Appellant tested positive for drugs, and, at this time, the plan was for Appellant to enter an inpatient facility. *Id.* However, Appellant failed to do so. *Id.*

Thereafter, Appellant committed a new crime, which led to a new conviction, and was the basis for the revocation of his probation for the current case. The Commonwealth acknowledged Appellant has "some barriers" to receiving help; however, resources have been in place since 2022 to assist him. *Id.* The Commonwealth averred Appellant has failed to take the necessary steps to make a positive change. *Id.*

In response, Appellant's counsel admitted that Appellant was "told to go to an inpatient program." *Id.* However, she noted that, given Appellant's inability to read or write and lack of education, it was understandable that Appellant did not take the appropriate steps to be admitted into an inpatient program. *Id.* She acknowledged that First Step may not have been "strict enough" to assist Appellant in addressing his addiction problems. *Id.*

The VOP court noted that Appellant seems to deny he has any addiction issues. *Id.* In this vein, the VOP court noted that, in the PSI report, while Appellant admitted to occasional use of marijuana and crack cocaine, he denied having an addiction. *Id.* The VOP court noted Appellant also denied

having a history of mental illness. *Id.* The VOP court indicated the mental health evaluation revealed Appellant suffers from insomnia. *Id.* at 11.

Appellant's counsel acknowledged the mental health evaluation, but she reminded the VOP court that people who can neither read nor write are at a great disadvantage in society. *Id.* She reiterated that Appellant completed the Batterers' Intervention Program. *Id.* She indicated that, since he has been in prison, Appellant has worked in the kitchen and has "absolutely no write-ups." *Id.*

The Commonwealth requested that the VOP court resentence Appellant to a period of state incarceration plus probation, as well as continue the no contact order for the victim. *Id.* at 12. In support thereof, the Commonwealth indicated:

> What is absolutely frightening about these cases is the fact that while he completely disrespected the [trial] court's order while being given the opportunity to go into inpatient and to essentially redeem himself, absconds and then enters the apartment building of [another victim], pushes her into her apartment, closes the door behind him, and thankfully there was a back door for her to escape.
>
> Obviously, the [Commonwealth] cannot speculate as to what would have occurred if there was no back door, but given the history with [that victim]…he pled to a simple assault although it involved strangulation. So, [Appellant] essentially has two strangulations, two different victims….He doesn't comply while he is on probation. He has been given an opportunity to enter inpatient [treatment] and denies [that he has] a drug issue. How can he go into inpatient [treatment] and address what…we all strongly believe is a drug issue, him having a drug issue if he cannot even admit to having that addiction problem.
>
> He has done well in the Allegheny County Jail because his issue isn't other men or males, the male population because his

- 6 -

issue is as we can see through his priors, his interactions with his intimate or former intimate partners.

[B]ased upon all of his history, he has shown us exactly what he intends to do in the future, and [the Commonwealth believes] state incarceration…is the appropriate sentence.

*Id.* at 13-14.

Appellant's counsel reminded the VOP court that Appellant's latest conviction was for the charge of criminal trespass and not strangulation. *Id.* at 14. The VOP court indicated it was "well aware of his criminal history as the [latest crime] occurred only months after his no contact order with [a victim] was closed out, mere months after it was closed out all of a sudden we have violence again with [that same victim, resulting in his conviction for criminal trespass]." *Id.*

The VOP court asked Appellant if he wished to make a statement, and Appellant indicated affirmatively. *Id.* at 15. Appellant indicated he wasn't sure about "this drug and alcohol [idea], but [he] wouldn't mind going into an in-house program [to] work out the problems [he has]." *Id.* Appellant testified the idea of alcohol and drug treatment is "brand new to [him and he] didn't set out to hurt anybody." *Id.* He indicated that he did not try to do violence to the latest victim, and he denied either pushing her or forcing her to run out of the house. *Id.* Appellant said he "didn't have a clue" why a prison term was being suggested in this revocation matter, and he wanted "a chance to clean up [his] drug addiction if that's the case, not sentence [him to prison] knowing [he has no way] of reading and writing." *Id.* Appellant

- 7 -

informed the VOP court that no one gave him information as to who to contact regarding the Batterers' Intervention Program prior to his arrests. *Id.* Appellant averred that putting him in prison would be akin to throwing him into the "lion's den and [he is] a sheep." *Id.*

The VOP court indicated the following:

> [Appellant], I'm sorry, but I'm not believing you because domestic violence cases—sir, those probation officers always provide that information. They help you do it. I was a domestic violence Judge for three years, and they always help you do it. So, I'm not buying that they didn't give you the phone number.
>
> ***
>
> [Y]ou're standing here telling me you have no idea why you're here, okay, you didn't strangle anybody. You strangled [the victim in the instant matter] so badly that she was in the hospital, she had marks and swelling all over her neck [such] that they were very concerned about her in the hospital[.] And you're telling me now that didn't happen?
>
> ***
>
> [I have] read your [PSI] report. I'm not confused after looking at what happened in all of these cases. I'm not confused with the timeline; that is as soon as you get off probation with [the victim in a different case], within months you're back pushing your way into her house, as soon as the no contact order is lifted, after another very violent assault[.]
>
> So, sir, at this point, you know, you were given an opportunity. We worked really hard on this plea to make sure that you would have an opportunity to do the right thing, to be on house arrest, to take care of any issues that you had, which is what you would have done at First Step. And you get there and two weeks later you were gone using crack cocaine. And you end up spending another month in jail because First Step said he spends a month in jail we'll take him back. They took you back on July 5th and then again on July 27th, three weeks later, again another relapse, leaving that program, getting kicked out of that program.

Then you're arrested a couple of months later for criminal trespass against [a victim]. You know, when I look back at all of the priors, the constant allegations against you of simple assault, simple assault, simple assault, strangulation, strangulation, burglary, simple assault, criminal trespass, you know, it sets up a pattern. It is very easy to understand.

So, what [the VOP court] is going to do, sir,—there are new guidelines in this case, just want to make sure everybody is aware of that. The original guidelines in this case on the felony two strangulation were…18 in the mitigated, 30 to 42 in the standard, and 54 in the aggravated. Once he became a convicted violator, those guidelines were raised to 24 in the mitigated, 36 to 48 in the standard, and 60 in the aggravated.[3]

And, [Appellant], what [the VOP court] is going to do is revoke the entire sentence. [The VOP court] is going to give you a new sentence of four to eight years in prison. You have credit for time served,…so that's approximately five months of credit that you will have. The rest of the credit on this case was all used on previous cases.

*Id.* at 16-19 (footnote added).

The VOP court determined that Appellant is not RRRI eligible. The VOP

court sentenced Appellant to four years to eight years in prison. *Id.* at 20.

The VOP court continued the no contact order as to the instant victim. The

---

[3] On January 1, 2020, our legislature adopted Resentencing Guidelines, which "[t]he court shall consider…in determining the appropriate resentence upon a revocation of probation." 204 Pa. Code § 307.2(a). The Resentencing Guidelines have been amended. *See* 204 Pa. Code § 307.2(b). Relevantly, the initial Resentencing Guidelines apply to revocations of probation for offenses committed on or after January 1, 2020, but prior to January 1, 2021. *See* 204 Pa. Code § 307.2(b)(1) ("The initial Resentencing Guidelines, effective January 1, 2020, apply to all offenses committed on or after January 1, 2020, but prior to January 1, 2021, for which the 7th Edition, Amendment 5 Sentencing Guidelines applied."). The initial Resentencing Guidelines are applicable here since Appellant committed his underlying offense of strangulation as to the instant victim on October 5, 2020.

VOP court provided Appellant with his post-sentence motion and appellate rights. *Id.* at 21-22.

Appellant filed neither timely post-sentence motions nor a direct appeal. However, on September 9, 2024, Appellant filed a timely counseled petition under the PCRA seeking the restoration of his post-sentence motion and direct appeal rights *nunc pro tunc*. On September 19, 2024, the PCRA court granted Appellant's PCRA petition and specifically reinstated Appellant's post-sentence motion and direct appeal rights.

Appellant filed a timely post-sentence motion, which the VOP court denied on October 4, 2024. This counseled appeal followed on October 15, 2024, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following in his "Statement of the Questions Involved" (verbatim):

I.  In revoking and re-sentencing Mr. Martin to 4-8 years' incarceration, whether the trial court abused its discretion by failing to consider Mr. Martin's personal history, character, and treatment and rehabilitative needs (in particular, that he cannot read or write and how that impacts his ability to function in society), in violation of 42 Pa.C.S.A. § 9721(b)?

II. In revoking and re-sentencing Mr. Martin to 4-8 years' incarceration, whether the trial court abused its discretion by focusing solely on the seriousness of Mr. Martin's new crimes and behavior, in violation of 42 Pa.C.S.A. § 9721(b)?

Appellant's Brief at 6 (suggested answers and bold omitted).

Initially, we note that "in an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation

- 10 -

proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." *Commonwealth v. Wright*, 116 A.3d 133, 136 (Pa.Super. 2015) (citation omitted).

Here, Appellant presents challenges to the discretionary aspects of his sentence. *See Commonwealth v. Rhoades*, 8 A.3d 912 (Pa.Super. 2010). When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa.Super. 1997). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court] conduct[s] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Taylor*, 137 A.3d 611, 618 (Pa.Super. 2016) (*en banc*).

Here, assuming, *arguendo*, all of these requirements have been met, we conclude Appellant's sentencing claims are meritless.

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the [VOP] court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment— a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Starr*, 234 A.3d 755, 760-61 (Pa.Super. 2020) (citation omitted).

"Upon revocation of probation, all sentencing alternatives available to the court at the time of the initial sentence shall be available to the court for resentencing." 204 Pa. Code § 307(c). Relevantly, following the revocation of probation, the court may impose a sentence of total confinement if, as occurred in the instant matter, the defendant has been convicted of another crime. *See* 42 Pa.C.S.A. § 9771(c).[4]

When imposing a sentence of total confinement after a probation revocation, the sentencing court must consider the factors set forth in Subsection 9721(b) of the Sentencing Code. *See Commonwealth v. Derry*, 150 A.3d 987 (Pa.Super. 2016); *Commonwealth v. Yeager*, 876 MDA 2024, 2025 WL 30854 (Pa.Super. filed 1/6/25) (unpublished memorandum) (discussing the application of Section 9721 to resentencing following the revocation of probation).[5] Pursuant to Subsection 9721(b):

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

---

[4] We note that, effective June 11, 2024, Subsection 9771(c) was amended. The pre-amended and amended versions of Subsection 9771 provide that a VOP court may impose total confinement upon the revocation of probation where the defendant has been convicted of another crime.

[5] Pursuant to Pa.R.A.P. 126(b), we may rely on unpublished memorandum issued after May 1, 2019, for their persuasive value.

42 Pa.C.S.A. § 9721(b).

Following a revocation of probation, a VOP court need not undertake a lengthy discourse for its reasons for imposing a sentence of total confinement, but the record as a whole must reflect the court's consideration of the facts of the crime or violation, and the character of the offender. ***Commonwealth v. Crump***, 995 A.2d 1280, 1283 (Pa.Super. 2010).

Here, Appellant contends the VOP court imposed an excessive sentence. Appellant avers "a careful review of the ***Gagnon II*** hearing transcript reveals that the [VOP] court failed to consider [Appellant's] personal history, character, and treatment and rehabilitative needs." Appellant's Brief at 17. In this vein, Appellant contends the VOP failed to consider that Appellant's advanced age, as well as his inability to read and write, were "catalysts for his problematic behavior[.]" ***Id.*** at 27. Further, Appellant contends the VOP court focused "only [on] the seriousness of [Appellant's] new conviction and the negative information contained in his PSI [report when it] sentenced [Appellant] to 4-8 years' incarceration." ***Id.*** at 28-29.

We conclude that, during resentencing, in open court, the VOP court stated its reasons on the record for the sentence it imposed. Specifically, the VOP court's statement reveals it considered all factors under Subsection 9721(b). For example, the VOP court indicated the need to protect the public from Appellant, who, while on electronic home monitoring for the instant case, and within months of being released from probation as to a different victim,

- 13 -

committed additional crimes. N.T., 7/3/24, at 17.

Further, the VOP court indicated it considered the gravity of the offense as related to the instant victim. In this vein, the VOP court noted Appellant strangled the victim "so badly that she was in the hospital[.]" *Id.* at 16.

Additionally, the VOP court noted it considered the rehabilitative needs of Appellant, particularly as it relates to Appellant's addiction issues. Also, given the VOP court specifically indicated it reviewed Appellant's PSI report, we can assume the VOP court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

Additionally, it bears mentioning that, in its Opinion, the VOP court specifically acknowledged it was aware of Appellant's age, inability to read or write, and his lack of education. VOP Court Opinion, filed 1/9/25, at 8. The VOP court indicated that "any attempt at a successful probationary term [in the instant case] was relatively short lived, and [Appellant] failed to take advantage of the opportunities that his original sentence had afforded him." *Id.* at 9. The VOP court noted that, not only did Appellant commit new crimes while he was on electronic home monitoring for the instant matter, but he "did not engage in any genuine attempts at rehabilitation[.]" *Id.* at 10.

Furthermore, the VOP court indicated that, from the beginning, Appellant failed to abide by the First Step program, absconded, and used crack

cocaine. *Id.* Thereafter, Appellant was given another opportunity to comply with the First Step program, and he failed to do so, including using drugs. *Id.* The VOP court indicated that it "meaningfully considered [Appellant's] counsel's argument, and it weighed those considerations against other, more compelling, factors that warranted a serious sentence of incarceration." *Id.* at 11.

We conclude the VOP court did not abuse its discretion in sentencing Appellant following the revocation of his probation. The VOP court imposed an individualized sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of Appellant. 42 Pa.C.S.A. § 9721(b). Finally, the VOP court considered the mitigating circumstances and did not focus solely on the seriousness of the crime. The fact Appellant wishes the VOP court would have weighed the factors differently does not entitle him to relief.

For all of the aforementioned reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/18/2025